IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

_____

|  |  |  |
|---|---|---|
| NANCY LOFTUS | | ) |
| | Plaintiff, | ) |
| | | ) |
| v. | | ) |
| | | ) |
| DAVID BOBZIEN, et al. | | ) |
| | | ) |
| | | ) |
| | Defendants. | ) |

Civil Action #1:15-cv-692 (CMH/JFA)

_____ )

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

_____/s/_____
J. Chapman Petersen, Esq., VSB #37225
Jason F. Zellman, Esq. VSB #77499
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone: 703-251-5400
Facsimile: 703-591-9285
jpetersen@siplfirm.com
jzellman@siplfirm.com
Counsel for Ms. Loftus

**TABLE OF CONTENTS**

**Page**

1. SUMMARY…………………………………………………………………… 6

2. STATEMENT OF FACTS…………………………………………………… 6

3. PARTIES……………………………………………………………………… 6

4. MS. LOFTUS RUNS FOR CITY COUNCIL IN FAIRFAX CITY…………... 7

5. LOFTUS THREATENED WITH DISMISSAL………………………………… 9

6. STANDARD OF REVIEW…………………………………………………….. 12

7. ARGUMENT…………………………………………………………………… 13

    a. Ms. Loftus Has Stated a § 1983 Claim and Alleged Constitutional

       Violations………………………………………………………….. 13

       i. The First Amendment Applies to Public Employees…………… 13

          1. Standard of Federal Law………………………………... 13

          2. The First Amendment Interest Extends to Seeking Political

            Office…………………………………………………… 15

          3. Defendants Have Not Articulated a Sufficient Basis –

            Legally or Factually – to Deprive Ms. Loftus of Her First

            Amendment Rights……………………………………... 16

          4. The Defendants Failed to Determine that Loftus was

            "Unfit" in Violation of County Ordinance……………… 21

    b. The Actions of Defendants Bobzien and Long are not Protected by

       Qualified Immunity………………………………………………... 22

       i. Even if there is Qualified Immunity, It Does Not Apply to

1

Retaliatory Actions Against Employees Who Exercise
Constitutional Rights……………………………………........ 25

c.  Defendants Bobzien and Long Are Liable in their Official Capacities… 26

d.  Ms. Loftus Has Properly Stated a Claim for Violations of Virginia Code §
15.2-1512.2 and Has a Private Cause of Action Under § 15.2-1512.2…. 28

i.  Ms. Loftus Has a Private Cause of Action Under *Bowman* Based
Upon the Defendants' Unlawful Termination of Her………….... 29

ii.  "Candidates for Political Office" Necessarily Includes Those Who
Are Successfully Elected……………………………………….. 30

iii.  Loftus Has a Right to Protect Her Employment and Benefits….. 31

iv.  The "Grievance Proceeding" is Nt an Acceptable Venue for
Discharging Her State or Federal Claims Against the County…. 32

e.  Bobzien and Long are Both Liable to Ms. Loftus for Violations of Va.
Code § 15.2-1512.2 and County Ord. 3-1-19…………………………... 33

8.  CONCLUSION……………………………………………..………….. 34

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

**Cases**

*ACLU v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1983)……………………….…….. 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (U.S. 2009)………………………………….……….. 12

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)……………………….…….. 12

*Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985)……………………….. 29, 30, 31

*Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011)……………………..…………… 23

*Buckley v. Valeo*, 424 U.S. 1, 11 (1976)…………………………………………………… 15, 16

*City of Virginia Beach v. Harris*, 259 Va. 220, 523 S.E.2d 239 (Va. 2000)…………………… 29

*Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985)………………………......…… 17

*Commonwealth v. Greyhound Lines, Inc.*, 206 Va. 550 (1965)……………………………… 30

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80, 84-85 (1957)….. 12

*Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972)………………………… 12

*Cutts v. Peed*, 17 Fed. Appx. 132, 136 (4th Cir. 2001)………………………………..…… 23

*Dray v. New Market Poultry Products, Inc.*, 258 Va. 187, 191 (1999)………………………… 30

*Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)…………………………………………… 19

*Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999)……………………………… 20

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)………………………………………………… 12

*FCC v. League of Women Voters*, 468 U.S. 364, 401 (1984)………………………………... 15

*Fletcher v. Marino*, 882 F.2d 605 (2d Circ. 1989)………………………………………... 15

*Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951 (2006)…………………………… 13

*Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 356 (4th Cir. 2000)………….. 20

*Graham v. Richardson*, 403 U.S. 365 (1971)………………………………………….....… 14

*Hairston v. District of Columbia*, 638 F. Supp. 198, 202 (D.D.C. 1986)……………………… 31

*Hanton v. Gilbert*, 36 F.3d 4, 6 (4th Cir. 1994)……………………………………………… 18

*Huang v. Board of Governors*, 902 F. 2d 1134, 1140 (4th Cir. 1990)…………………….....… 20

*Jenkins v. Town of Bryson City*, No. 91-1054, 1991 U.S. App. LEXIS 23745 at 4….…… 17, 21, 16

*Kroll v. United States Capital Police*, 847 F.2d 899, 906 (D.C. Cir. 1988)…………………… 26

*Kusper v. Pontikes*, 414 U.S. 51, 56-56 (1973)………………………...……………………… 13

3

*Liverman v. City of Petersburg*, 2015 U.S. Dist. LEXIS 59431 (E.D. Va. 2015)...... 14, 19, 21, 26

*Lockhart v. Comm. Educ. Systems*, 247 Va. 98, 105 (1994)……………………………………… 29

*Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973)………………………………………………… 14, 15

*Mandell v. Allen*, 889 F. Supp.857, 865 (E.D. Va. 1995)………………………………….... 31, 32

*Magill v. Lynch*, 560 F.2d 22, 27 (1st Cir. 1977)…………………………………………… 15, 16

*Miller v. SEVAMP, Inc.*, 234 Va. 462, 468 (1987)…………………………………………….... 29

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)……………….…………… 12

*Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977)……………………....……… 15, 16

*Pickering v. Board of Education*, 391 U.S. 563 (1968)………………………… 14, 18, 19, 20, 22

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)…………………………… 26, 27, 28

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972)……………………………………….…………….. 14

*Rankin v. McPherson*, 483 U.S. 378, 383, 107 S. Ct. 2891 (1987)……………………………... 13

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)……………………….. 12

*Riccio v. County of Fairfax*, 907 F.2d 1459, 1463 (4th Cir. 1990)……………………………… 17

*Ridpath v. Bd. Of Governors Marshall University*, 447 F. 3rd 292, 306 (4th Cir. 2006)……….... 23

*Robinson v. Balog*, 160 F.3d 183, 189 (4th Cir. 1998)…………………………………………….. 19

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974)…..…. 12

*Skinner v. Loudoun County Dep't of Mgmt. & Fin. Servs.*, 2015 U.S. App. LEXIS 2008 at *1-2 (4th. Cir. 2015)…………………………………………………………………….……..… 17

*Smith v. Gilchrist*, 749 F.3d 302, 308 (4th Cir. 2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)………………………………………………………………………………… 23

*Speiser v. Randall*, 357 U.S. 515 (1978)……………………………………………………... 14

*Stickley v. Southerly*, 416 F. App'x 268, 273 (4th Cir. 2011)…………………………………… 27

*Suarez v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)…………………………………..…… 25

*Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001)………………………………………………… 25

*United Pub. Workers of America v. Mitchell*, 330 U.S. 75 (1947)……………………... 14, 15, 18

*United States v. Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548 (1973)…………………………………………………………………………… 10, 16, 18

*Walker Proc. Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965)………………………………………………………………………… 12

*Wood v. Commonwealth*, 213 Va. 363, 366 (1972)…………………………………..…… 30

4

**Statutes**

42 U.S.C. § 1983…………………………………………………………..………..passim

Fairfax Co. Ord. 3-1-1…………………………………………………….…… 17, 28, 29

Fairfax Co. Ord. 3-1-2……………………………………………………….….... 17, 29

Fairfax Co. Ord. 3-1-19…………………………………………………..………passim

Fairfax County Pers. Reg. 4.16……………………………………………………… 23

Fed. R. Civ. Proc. Rule 8(f)………………………………………………………….. 12

Va. Code 15.2-516………………………………………………………………… 27

Va. Code § 15.2-1512.2…………………………………………………………..passim

Va. Code 15.2-1542………………………………………………………………….. 28

Va. Code § 24.2-947.1.553………………………………………………….… 14, 31

The Plaintiff, NANCY LOFTUS ("Ms. Loftus"), by counsel, hereby opposes the Motion of the Defendants ("the Motion") to dismiss her claims under Rule 12(b)(6) of Federal Rules of Civil Procedure and states the following in opposition:

### Summary

The substance of this motion and, indeed, this case revolves around the simple question: is Fairfax County subject to its own ordinances and the laws of Virginia which guaranty political participation, or can it threaten and eventually terminate its employees who attempt to utilize those laws which protect their First Amendment rights?

### Statement of Facts:

This case arises from the decision of the Fairfax County Attorney on June 27, 2014 to terminate Ms. Loftus as an Assistant County Attorney for Fairfax County, solely because she had been elected to the City Council in Fairfax City, a neighboring but independent jurisdiction.  The County Attorney's decision to unlawfully terminate Ms. Loftus was later ratified and approved by the Fairfax County Executive.

### Parties

Ms. Loftus is an attorney formerly employed at the Fairfax County Attorney's office. She resides in Fairfax City, Virginia, an independent jurisdiction located within the boundaries of Fairfax County.[1]  David Bobzien ("Bobzien") is the County Attorney for Fairfax County. Edward L. Long ("Long") is the County Executive for Fairfax County.  Compl. at ¶ 7.

Loftus is a lawyer licensed to practice in the Commonwealth of Virginia.  She served as an assistant county attorney in the Fairfax County Attorney's office from 1997 until her

---

[1]      The Motion states that the City and County have "overlapping geographies."  (Memo at 3).  They do not. The City is independent has its own autonomous boundaries.

termination on June 30, 2014.  During that time, Bobzien was the County Attorney and, therefore, her direct supervisor. Compl. at ¶ 17.

Loftus was a competent and capable assistant county attorney, with a specialty in bankruptcy and tax law.  She was responsible for representing the County in cases involving bankruptcy and creditor's rights issues, by enforcing tax liens against <u>County</u> residents and businesses who failed to pay their taxes.  She had no professional dealings with Fairfax City, which is not subject to County property taxes. Compl. at ¶ 18.

In addition to her career as an assistant county attorney, Ms. Loftus was active in her hometown of Fairfax City, where she had served on civic boards and commissions, prior to 2014. This interest was separate and apart from her professional responsibilities for Fairfax County and did not lead to any conflicts with her profession. Compl. at ¶ 21.

### Ms. Loftus runs for City Council in Fairfax City

In early 2014, Ms. Loftus decided to run for a seat on the Fairfax City Council, the part-time and non-partisan board charged with setting policy for the independent City.  The City Council meets twice monthly on Tuesday evening for public hearings, and all members have outside employment.[2] Compl. at ¶ 22.

On February 7, 2014, Ms. Loftus contacted Defendant Bobzien, her supervisor, and let him know that she was considering a run for the City Council, which held its municipal elections in May 2014.  Defendant Bobzien did not object or give any reason why Ms. Loftus should not run (or serve) on the City Council.  Instead, he told Ms. Loftus to speak to Peter D. Andreoli, the Deputy County Attorney for Personnel, about her candidacy. Compl. at ¶¶ 23-24.

---

[2]      See  http://www.fairfaxva.gov/government/mayor-city-council.  Under the Fairfax City Charter, which is set by the General Assembly, the City Council members are entitled to a maximum annual "salary" of $4,500.00.

Mr. Loftus met with Mr. Andreoli that same day. He did not object to her candidacy or potential service. Rather, he informed her about Va. Code § 15.2-1512.2, Virginia's "right to participate" law, and County Code § 3-1-19, the companion County ordinance. Compl. at ¶ 25. The purpose of this meeting was to inform her of her rights (under both laws) to participate in the election. Neither Mr. Bobzien nor Mr. Andreoli gave any indication that she would be threatened during her race or fired upon being elected. *Id.*

On February 7, 2014, after these meetings with Bobzien and Mr. Andreoli, Ms. Loftus sent an email to Bobzien confirming that (i) she was interested in running for a seat on Fairfax City Council, (ii) she was permitted to do so by state law and local ordinance and (iii) she had received his approval as her supervisor. Defendant Bobzien responded by email and said "thanks; just don't do anything in uniform." Notably, his reply tracked the language of County Code Section 3-1-19(b)(2), which permits County employees to participate in politics but forbids them from campaigning "in uniform." Compl. at ¶¶ 26-27.

Five days later, on the afternoon of February 12, 2014, Defendant Bobzien sent a second email to Ms. Loftus which first raised concerns about Ms. Loftus seeking a City Council seat. Specifically, the February 12th email referenced the 2013 negotiation and sale of the City's water system to Fairfax County Water Authority ("the Authority"). Compl. at ¶¶ 28-29. Ms. Loftus immediately responded with an email at 5:16 pm as follows:

> David:
>
> Unfortunately, you've left the office for the day. Please call me tonight on my cell phone: xxx-xxx-xxxx. This is important. Although I understand your concerns, in my 17 years in the office I've never been involved in any case against, or even with, the City. In the

extremely unlikely event that any such issue arises, there are ways to handle it, just as we would if you were injured at work and had to file litigation against the County.

I have again reviewed Virginia Code section 15.2–1512.2 and Fairfax County Code section 3 – 1 – 19.   As previously pointed out, under these statutes the County is prohibited from preventing my participation in political activity - including running as a candidate for Fairfax City Council. I am anxious to discuss this further, please call me tonight.

Nancy
Xxx-xxx-xxxx   Compl. at ¶ 31.

Bobzien responded in writing at 5:44 pm to Ms. Loftus' email:  "*Cathy and I are leaving for a friend's house in the neighborhood.  No need to discuss further; I see and accept your point*."  In plain language, he acquiesced in her request to run for the Council, with the self-evident reality that she might be elected.  True and accurate copies of the February 12 emails are attached to the Complaint as Exhibits A and B.

Notably, while he was addressing these issues with Ms. Loftus, Bobzien was also considering the request of a Fairfax County Supervisor, a practicing attorney, seeking permission for the Supervisor's law firm to represent the Fairfax County Sheriff's Office, which receives over $40 million in funds from Fairfax County through an annual budget decided by the Board of Supervisors.  Compl. at ¶¶ 32, 36.  Notwithstanding that apparent "conflict" and the lack of any state statute on point, Mr. Bobzien took the position that the Fairfax County Supervisor could represent the Sheriff – and simply recuse himself when asked to vote on an issue involving the Sheriff's office. Compl. at ¶ 38.

### Loftus Threatened with Dismissal

On April 17, 2014, nine weeks after Defendant Bobzien "accept[ed]" Ms. Loftus' position in the February 12th email exchange and a month after she had filed as a candidate,

9

Defendant Bobzien delivered to Ms. Loftus a memo which threatened her with dismissal if she continued as a candidate for City Council.[3] Compl. at ¶ 40.  A true and accurate copy of that memo is attached to the Complaint as Exhibit C.

Upon receiving the April 17 memo, Ms. Loftus contacted the Virginia State Bar regarding the situation and sought its opinion regarding her candidacy.  The State Bar issued an opinion via email which stated that there was no "prima facie" conflict between her position with the County Attorney and a position with Fairfax City. Compl. at ¶ 45. A copy of the State Bar's response is attached to the Complaint as Exhibit D.[4]

On May 6, 2014, the voters elected Ms. Loftus to the Fairfax City Council.  She was scheduled to assume office on July 1st, 2014.  On May 29th, five weeks before she assumed her part-time position, Mr. Bobzien abruptly barred Ms. Loftus from the office and her computer and reassigned all her case work.  Compl. at ¶¶ 49-50.

On that same day (May 29), Mr. Bobzien via his deputy delivered a second memo which placed her on administrative leave and warned Ms. Loftus that her termination would be permanent unless she renounced her City Council position.  A copy of the May 29th memo from the County Attorney's office is attached to the Complaint as Exhibit F.  Compl. at ¶ 51.

---

[3]      The Defendants' Memo stated that Mr. Bobzien shared "his research" into the conflicts issue.  Notably, is "research" did not include Virginia Code Section 15.2-1512.2 or the similar County ordinances, which permit political activity.  (Memo at 5).  Nor did "his research" reveal the fact that an attorney for Fairfax County had served on the elected Fairfax City School Board, which contracts with the County for all its services, for twelve (12) years – 1996-2008 – without any reprisal or allegation of conflict. Compl. at ¶ 15. It did include a *pro forma* recitation of agreements between the Fairfax City and Fairfax County, which are not unique to those jurisdictions and are typical of agreements between local governments in Virginia.

[4]      The Bar's response contained numerous qualifiers, all of which represented the fact that the State Bar was getting its information from one source (Ms. Loftus).  Curiously, it failed to add all these same qualifiers to the cryptic letter it issued to Mr. Bobzien a few weeks later, although again the information all emanated from one source (Mr. Bobzien).

On June 27, 2014 Defendant Bobzien terminated Ms. Loftus from her position as an assistant county attorney, for the sole reason that she had participated in the election, successfully won a seat, and now planned to assume office.  He also cut off her pension benefits, prior to her being fully vested.  Finally, he took away the health insurance which her family (husband and two daughters) relied upon.  Compl. at ¶ 59.

In the summer of 2014, Ms. Loftus filed a grievance under the Fairfax County rules which protested her firing and sought reinstatement as a County employee. Compl. at ¶ 61. During the course of that grievance which lasted through March 2015, her termination –and the manner in which it was effected -- was eventually reviewed and decided by the County Executive, Long.[5]  All the facts and legal arguments were made known to Long, who affirmed the decision of Bobzien, rather than restoring Ms. Loftus to her previous position – or an equivalent employment position within the County.[6] Compl. at ¶ 62.  In affirming the decision of Bobzien, Long affirmed the derogation of the rights of Ms. Loftus, both under Virginia law and Federal law. Compl. at ¶ 64.

### Standard of Review:

The standard by which a Court determines the sufficiency of a complaint under a Rule

---

[5]      In the Memo, the Defendants reference Ms. Loftus' appeal of a particular aspect of her grievance, namely the decision of the County Attorney to have his own counsel at each meeting when Ms. Loftus was unrepresented in violation of Va. Code § 15.2-1507, *et. seq*.  (Memo at 10).  That decision led the County Executive to order a "do over" of the grievance process, rather than an automatic reinstatement.  Ms. Loftus appealed that decision to the Circuit Court, which denied her reinstatement solely on the basis of that procedural error during the grievance.  In it opinion, the Circuit Court judge specifically stated that it was not ruling upon the underlying facts of her grievance or any underlying violation of her rights.  A copy of the opinion is attached hereto as Exhibit A.  That ruling and the subsequent denial of her appeal have no bearing on the merits of this case.

[6]      Over the course of that grievance, which involved repeated face-to-face meetings with Bobzien and other assistant County attorneys, Ms. Loftus produced opinions from two legal experts who each opined that the County was mistaken in finding that her part-time position as a City official disqualified her (or anyone else in the County Attorney's office) from representing Fairfax County as a lawyer.  See opinions attached hereto as Exhibits B and C. Notably, these opinions merely confirm her existing rights under Section 15.2-1512.2, which permits her to participate as a candidate in local elections.  No ethics opinion could ever supersede those rights.

12(b)(6) motion is well known - all well pleaded allegations of the complaint must be taken as true. *Cruz v. Beto*, 405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972); *Walker Proc. Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). Consequently, "a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (U.S. 2009)

The complaint must be liberally construed, with the benefit of all proper inferences being given to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80, 84-85 (1957); Fed. R. Civ. Proc. Rule 8(f). Not every essential fact need be set down in the pleadings: it is sufficient if a fair reading of the complaint provides sufficient notice of the claim and its scope. Id.

A Rule 12(b)(6) motion to dismiss "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering the motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id. at 1134.

## Argument:

### I.   Ms. Loftus Has Stated a § 1983 Claim and Alleged Constitutional Violations.

Ms. Loftus has properly alleged that her First Amendment rights to Freedom of speech and

Freedom of expression, exemplified by participation in the political process, are protected by the

First Amendment and were violated by the Defendants.   Therefore, she has a legal claim under

42 U.S.C. § 1983, which protects citizens from government actions which cause "the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws."

### A.  The First Amendment Applies to Public Employees

#### 1.  Standard of Federal Law

 In a long line of cases, the Court has found that the First Amendment rights apply to

employees of state and local governments.  *See, Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S.

Ct. 1951 (2006) ("public employees do not surrender all their First Amendment rights by reason

of their employment. Rather the First Amendment protects a public employee's right, in certain

circumstances, to speak as a citizen addressing matters of concern").[7]

"It is clearly established that a State may not discharge an employee on a basis that

infringes that employee's constitutionally protected interest in freedom of speech."  *Liverman v.*

*City of Petersburg*, 2015 WL 2127028 (E.D. Va. 2015), citing *Rankin v. McPherson*, 483 U.S.

378, 383, 107 S. Ct. 2891 (1987).

The United States Supreme Court has stated government:

"may not deny the benefit to a person on a basis that infringes his constitutionally protected
interests especially, his interest in freedom of speech.  For if the government could deny a benefit
to a person because of his constitutionally protected speech or associations, his exercise of those
freedoms would in effect be penalized and inhibited.  *Speiser v. Randall*, 357 U.S. 513, 526
(1958).  Such interference with constitutional rights is impermissible.

---

[7] The Supreme Court has gone even further and stated "[t]he right to associate with the political party of one's
choice is an integral part of this basic constitutional freedom."  *Kusper v. Pontikes*, 414 U.S. 51, 56-56 (1973).  Of
course, that is not applicable here as Ms. Loftus was seeking a non-partisan position.

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

In limiting the First Amendment rights of Ms. Loftus to participate in local politics, the Defendants rely heavily on cases "upholding" limits applied uniformly against public employees, such as *United Public Workers v. Mitchell*, 330 U.S. 75 (1947), which held the Federal "Hatch Act" was constitutional.[8]  (Notably, the Hatch Act is the exact opposite of the County's actions in this case – i.e. it's a reasonable restriction on partisan activity consistently applied against all Federal employees versus an *ad hoc* retaliation against one County employee.)  Those cases, on their face, differ from this one where the underlying state law <u>supports</u> political participation, and Fairfax County (and Virginia) have enacted no law or ordinance which supports the County Attorney's position.

Moreover, the Defendants' reliance on *Mitchell* is outdated, as subsequent cases, including *Mancuso v. Taft*, 476 F.2d 187 (1st Cir. 1973) distinguish between (i) partisan and non-partisan political participation and (i) federal and local political participation, i.e. finding situations in which the employee's participation would not compromise their role as a local government employee.  These cases are all in Ms. Loftus' favor as they support her First Amendment right to freely participate in a non-partisan activity outside her professional employment within Fairfax County.  See e.g., *Speiser v. Randall*, 357 U.S. 515 (1978); *Pickering v. Board of Education*, 391 U.S. 563 (1968); and *Graham v. Richardson*, 403 U.S. 365 (1971).

In fact, subsequent cases after *Mitchell* defer to state laws such as Va. Code Section 15.2-1512.2 to determine if there is First Amendment right which overrides the state's interest in

---

[8] Ironically, the presence of the "Hatch Act" is one of the reasons that many localities in northern Virginia – including Fairfax City – have a tradition of non-partisan elections.  Otherwise, numerous citizens, including the father of the undersigned attorney, would not have been able to serve on the Fairfax City Council.  Notably, the Federal government does not prohibit its employees (including attorneys) from serving in these part-time leadership or elected positions.  Indeed, Fairfax County has had several Federal employees, including practicing attorneys, serve in elected office.   (Compl. at ¶¶ 14, 39).

limiting political participation of its employees, e.g., *FCC v. League of Women Voters*, 468 U.S. 364, 401 (1984). Additionally, *Mancuso* recognized the Supreme Court's own pulling back from the strict "right-privilege" distinction regarding public employment and First Amendment rights articulated in *Mitchell* so as to protect First Amendment expression.

The bottom line is that Ms. Loftus has a *prime facie* right to participate in the political process under the First Amendment and the Defendants' retaliatory actions for exercising those rights are presumptively a violation of 42 U.S. § 1983.

### 2. The First Amendment Interest Extends to Seeking Political Office

Even if they concede the First Amendment interest, Defendants take the position that Ms. Loftus has no constitutional right, as a public employee, to successfully seek public office.[9] (Memo at 18). However, it is well established that municipal employees have a fundamental interest in *becoming* a public official, as a part of their First Amendment free speech right to engage in the political process. *See Magill v. Lynch*, 560 F.2d 22, 27 (1st Cir. 1977) (finding that public employees have a "fundamental interest" in political candidacy); *see also Newcomb v. Brennan,* 558 F.2d 825, 829 (7th Cir. 1977) (holding that a deputy attorney's interest in holding a Congressional seat, as a means to express political views, was at the core of values protected by the First Amendment); *Buckley v. Valeo*, 424 U.S. 1, 11 (1976) ("the First Amendment protects political association as well as political expression").

Critical in the courts' analysis of each of these cases was not whether the plaintiff was *running for* or *holding* public office, but whether the plaintiff was *engaged in political speech* and whether the restriction of that speech was outweighed by a legitimate government interest. .

---

[9]     The Defendants' case in support of their position, *Fletcher v. Marino*, 882 F.2d 605 (2d Circ. 1989), upheld a state law ("the Serrano law") which prohibited an elected official and/or political party member from serving "on any community school board." (Memo at 17). Again, that case bears no relation to this one: Ms. Loftus was not seeking "dual" elected offices in 2014. Nor is she a political party official. Finally, she is not trying to overturn a state law – she's trying to enforce one.

*See Magill,* 560 F.2d at 27; *see also Newcomb,* 558 F.2d at 829; *Buckley,* 424 U.S. at 15.

As mentioned *infra,* the issue of partisanship is critical, as well as the application of state and local laws which protect participation:[10]

> In short, the government may constitutionally restrict its employees' participation in nominally nonpartisan elections if political parties play a large role in campaigns.  *In the absence of substantial party involvement, on the other hand, the interests identified by the Letter Carriers Court lose much of their force.*  While the employees' First Amendment rights would normally outbalance these diminished interests, we do not suggest that they would always do so.
>
> *Magill,* 560 F.2d at 29.

Here, Ms. Loftus sought to exercise her First Amendment rights in running and holding a position on a non-partisan City Council.  Those political acts are fundamentally expressions of the First Amendment, which are expressly protected under all these cases.  Moreover, her actions are specifically protected by <u>state</u> laws, not prohibited by them.

### 3.  Defendants Have Not Articulated a Sufficient Basis – Legally or Factually -- to Deprive Ms. Loftus of Her First Amendment Rights

It is undisputed that Ms. Loftus was terminated in 2014 solely based on the exercise of her First Amendment right, whether as a candidate or a potential office holder.  In the Motion, Defendants claim as a matter of law that this is their prerogative under Federal jurisprudence. (Motion at 12).  Yet Federal case law states that such unilateral deprivations cannot be made so casually or without concern for state law or local ordinances that protect civil servants and distinguishes them from "at will employees."

In *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985), the United States

---

[10]     For example, the case of *Jenkins v. Bryson City*, cited by Defendants, turned on the fact that a police officer was seeking a **partisan** nomination.  (Memo at 15).  *See* No. 91-1054, 1991 U.S. App. LEXIS 23745 at 4 ("Other circuits have interpreted *Letter Carriers* … to hold that state and city governments may constitutionally dismiss their employees for becoming actively engaged in **partisan** political campaigns").  Similarly, North Carolina law in that case determined that the plaintiff in that case had no property interest in his employment but was an "at will" employee.  *See id.*

Supreme Court held that a government employee has a property interest in their job whenever a statute classifies that employee as a civil servant who can only be terminated "for cause." *See also*, *Skinner v. Loudoun County Dep't of Mgmt. & Fin. Servs.*, 2015 U.S. App. LEXIS 2008 at *1-2 (4th. Cir. 2015); *Riccio v. County of Fairfax*, 907 F.2d 1459, 1463 (4th Cir. 1990). *Cf. Jenkins v. Town of Bryson City*, No. 91-1054, 1991 U.S. App. LEXIS 23745 at 4 (public employee had no property interest in job when he was employed "at will")

Here, Fairfax County Ord. Chapter 3, Article I, defines Ms. Loftus -- an Assistant County Attorney with seventeen years service -- as a "merit system employee" in the "competitive service" who could only be "dismissed solely on the basis of merit and fitness in accordance with the provisions of this Article and Personnel Regulations." *See* Fairfax Co. Ord. 3-1-1 and 3-1-2(d). Similarly, County Pers. Reg. Chapter 16.5-4 required that Ms. Loftus could be fired "only when a department head has determined that [she was] unsuited for employment in Fairfax County." In other words, Ms. Loftus was not a temporary worker or "for cause" employee. Rather, she had a vested employment interest which was taken from her in reaction to her exercising of her First Amendment rights described *infra*.

Taking into account her protected employment status, Defendants' actions violated the First Amendment protections afforded to Ms. Loftus, as well as rights under Virginia Code § 15.2-1512.2 and County Ord. 3-1-19, by (i) threatening to fire her while she was a political candidate, (i) terminating her before she took public office and (iii) otherwise subjecting her to "intimidation, coercion and discrimination on account of such legitimate political activity."[11] In this way, the Defendants acted purposefully and recklessly to deprive Ms. Loftus of her property

---

[11] Ironically, the Defendants' own actions against Ms. Loftus should make them eligible for a "for cause" termination under the Fairfax County Personnel Regulations which prohibit a supervisor – or any employee – from harassing or intimidating a County employee based upon their "political affiliations" or "political activities." *See* Fairfax County Ordinances 3-1-19 and 3-1-22.

interest in her job in retaliation for exercising her free speech rights.

The County attempts to defend their indefensible conduct by citing cases that uphold restrictions on <u>partisan</u> political activity.[12]  But Ms. Loftus was seeking a non-partisan position. Defendants' only real argument is that the County's alleged interest in enforcing the Rules of Professional Conduct – based on a one-sentence hearsay letter with no recommended action -- outweighed Ms. Loftus's rights under the Constitution, State law and the County ordinance. However, assuming that the legal conflict was even a legitimate issue (and not superseded by Section 15.2-1512.2), an application of the *Pickering* balancing test still negates the County's position, especially since the County made no effort to seek the "least restrictive alternative." *See Pickering v. Board of Education*, 391 U.S. 563, 88 S. Ct. 1731 (1968).

The matter of *Pickering* arose from the firing of a public school teacher who publicly criticized local school officials.  On appeal, the United State Supreme Court reversed a state court decision on the grounds that the termination violated the First Amendment.  *See id*.  The *Pickering* test, articulated in this case and "balancing" of First Amendment interests with legitimate public interests, consists of three factors.  First, the Court considers whether or not the speech or association at issue relates to matters of public interest.  *Hanton v. Gilbert*, 36 F.3d 4, 6 (4th Cir. 1994).  Here, Ms. Loftus' constitutional right to participate in the political process as a candidate and to hold office is a matter of public interest.

The second factor for the Court to determine is whether the "employee's interest in First Amendment expression must outweigh the employer's interest in efficient operation of the workplace."  *Id*. at 6-7.  Here, Ms. Loftus' right to seek and hold public office outweighs any

---

[12]     The Defendants rely on cases discussing the Hatch Act and discussing federal employees seeking partisan offices.  See Defendants' references to *United Pub. Workers of America v. Mitchell*, 330 U.S. 75 (1947) and *United States v. Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548 (1973).

abstract (and unarticulated) interest by the County in promoting an "efficient" workplace. Indeed, Mr. Bobzien conceded as much when he initially "accepted" the desire of Ms. Loftus to run for office in February 2014, prior to threatening her dismissal in April.  Compl. at ¶¶ 23-32.

In fact, the Defendants have absolutely no evidence – and no credible argument -- that Ms. Loftus' position as a member of Fairfax City Council would negatively affect the Fairfax County Attorney's office, other than a self-serving "analysis" from the County Attorney that there might be a "conflict" based upon hypotheticals or past legal controversies.[13]  That is not sufficient as a matter of law.  Indeed, permitting the County to restrict its employees based on such vague and inchoate fears would nullify the First Amendment rights, specifically enumerated in *Pickering*.  "The Supreme Court has held that the government's burden of justifying the restriction on free speech 'is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on … speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Liverman v. City of Petersburg*, 2015 U.S. Dist. LEXIS 59431 (E.D. Va. 2015) citing *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993).

In its Motion, the Defendants have presented no evidence that efficiency of the Fairfax County Attorney's office was affected in any way by the mere fact of Ms. Loftus' potential position with Fairfax City Council.  See *Robinson v. Balog*, 160 F.3d 183, 189 (4th Cir. 1998). They have not alleged that she maligned the County during the campaign or sought to use proprietary information as a potential public official.  *Cf. Pickering*, 391 U.S. 563.  Nor have the Defendants made any attempt to distinguish the situation of Ms. Loftus from other County

---

[13]     By that logic, an attorney working for the U.S. Department of Justice, which has been legally adverse to Fairfax County on various occasions, could not seek an elected position with the County without compromising the other attorneys at the DOJ.  Yet, as alleged in the Complaint, that has happened repeatedly.  See id. at ¶¶ 14-16.

attorneys who served in elected office in Fairfax City for many years (1996-2008) and faced no

recrimination – even while voting on school contracts between Fairfax County and Fairfax City.

(Complaint at ¶ 16).

Under the *Pickering* standard, the Defendants cannot assert a "generalized and

unsubstantiated" interest against disruptions. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*,

218 F.3d 337, 356 (4th Cir. 2000). It must have a tangible reason to remove Ms. Loftus as an

Assistant County Attorney and, even then, it must assign her to a new County position, unless it

finds her to be "unfit" which it failed to do. *See supra*. It did neither. Therefore, the

"efficiency" argument must fail.

The third factor of the *Pickering* test states "the employee must establish retaliation of

some kind that he was deprived of a valuable government benefit or adversely affected in a

manner that, at the very least, would tend to chill his exercise of First Amendment rights."

*Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999). Here, Ms. Loftus has alleged

in her Complaint that she was threatened during the campaign and eventually terminated as a

result of her election to Fairfax City Council. Compl. at ¶ 59. "A public employer is prohibited

from threatening to discharge a public employee in an effort to chill that employees rights under

the First Amendment." *Huang v. Board of Governors*, 902 F. 2d 1134, 1140 (4th Cir. 1990). The

Defendants not only threatened to discharge Ms. Loftus – they actually did discharge her.

In summary, Ms. Loftus has tangible First Amendment rights, which are codified in state

law under Section 15.2-1512.2. As a professional employee with vested rights, she also had a

tangible interest in her continued employment with Fairfax County. *Cf. Jenkins v. Town of*

*Bryson City*, No. 91-1054, 1991 U.S. App. LEXIS 23745 at 4. The Defendants have failed to

establish a basis for depriving Ms. Loftus of her First Amendment rights, as defined and protected by state law.  Defendants Bobzien and Long have failed to demonstrate any actual harm to the County Attorney's Office, specifically, or to the County, generally, by Ms. Loftus serving on City Council.[14]  Nor have they articulated any interest that outweighs "the public's interest in allowing freewheeling debate on matter of public concern."  *Liverman* at *51.

### 4.   The Defendants Failed to Determine that Loftus was "Unfit" in Violation of County Ordinance

Assuming that the County's interest in "efficiency" did outweigh the First Amendment rights of Ms. Loftus, the threats and unilateral termination of her – before she even assumed elected office – violated their own civil service protections.  Since these improper threats and firing (without re-assignment) was done in retaliation for her seeking public office, it constitutes a separate basis for the § 1983 claim against the Defendants.

As mentioned *infra*, Ms. Loftus had a property interest in her employment and was protected from discharge unless she was determined to be "unfit."  Despite this requirement, the Defendants never determined Ms. Loftus was unfit for employment in Fairfax County before firing her.  Compl. at ¶ 61.  Rather, they only determined that she was "conflicted" from serving in the County Attorney's office.[15]  See County Attorney Memos attached to the Complaint as Exhibits B and D.  Ironically, Mr. Bobzien terminated Ms. Loftus outright, despite having a policy (exercised for other employees) that lawyers unfit for service in the County Attorney's Office could be assigned to other County agencies, without any loss of seniority or benefits.

---

[14] Moreover, the Defendant's termination of Loftus was issued on June 27, 2014 and made effective on June 30, 2014.  (Memo at p. 8).  Loftus did not formally take office until July 1, 2014.  No conflict had even arisen, or even could have arisen, at the time Loftus was fired.

[15] In fact, Defendant Bobzien testified under oath in the Grievance Hearing that he did not determine Ms. Loftus was unsuited for employment in Fairfax County but only in the County Attorney's Office.  See pp. 157-158 of March 18, 2015 Grievance Hearing Transcript attached hereto as Exhibit D.

Compl. at ¶ 63.  Again, assuming that there was an actual "conflict" created by the election of Ms. Loftus, the County Attorney and County Executive had sufficient means to find her alternative employment.  They made no effort to do so.

In summary, the Defendants under *Pickering* and its progeny – even without any reference to the "right to participate" Virginia law – still bear the burden of proving a legitimate interest which allowed them to deprive Ms. Loftus of her employment, once she decided to exercise her First Amendment rights.  On all points, the Defendants fail to demonstrate any such interest or the exercising of a less drastic alternative.  They fired before Ms. Loftus even took office as a City Council member or caused any actual conflict of interest.  They did not determine she was unfit for employment anywhere in Fairfax County.  They did not offer Ms. Loftus an equivalent position in any other County agency.

The actions of the Defendants, as officers of Fairfax County, deprived her of her rights under the United States Constitution and under state laws specifically designed to protect those same constitutional rights.   They violate 42 U.S. § 1983.

## II.    The Actions of Defendants Bobzien and Long are not Protected by Qualified Immunity

The Defendants assert that the doctrine of "qualified immunity" protects them from suit in this matter.  However, the Defendants' violations of Ms. Loftus' rights and their knowledge of the applicable law (repeatedly cited by Ms. Loftus' counsel prior to her June 2014 dismissal) disavows any protection offered through qualified immunity.

Qualified immunity only shields governmental officials from personal liability for damages under § 1983 when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See *Ridpath v. Bd. Of Governors Marshall University*, 447 F. 3rd 292, 306 (4th Cir. 2006); *Brockington v. Boykins*, 637

F.3d 503, 506 (4th Cir. 2011); *Smith v. Gilchrist*, 749 F.3d 302, 308 (4th Cir. 2014); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In that vein, the Defendants attempt to hide behind the purported conflict of interest and Fairfax County Pers. Reg. 4.16 which prohibits outside employment – but, as Bobzien and Long are well aware, it does <u>not</u> cover part-time civic involvement and was <u>not</u> invoked against the other Fairfax County attorney who served as an elected Fairfax City School Board member from 1996-2008.[16]  Compl. at ¶ 15. Moreover, defendants Bobzien and Long were both well aware of Sections 15.2-1512.2 and 3-1-19.  Since these statutes existed before Ms. Loftus' termination "a reasonable official…would have understood that such conduct violated clearly established law." *Cutts v. Peed*, 17 Fed. Appx. 132, 136 (4th Cir. 2001).

In fact, the Defendants cannot point to any actual conflict of interest involving Ms. Loftus or any history of terminating employees who serve on local boards or commissions, whether elected or appointed.  More importantly, under the Virginia Supreme Court Rules of Professional Responsibility (the Rules) and Legal Ethics Opinions (LEOs), which are subordinate to state law, it is <u>not</u> a conflict of interest for Ms. Loftus to work as an assistant county attorney in Fairfax County while serving as a member of the Fairfax City Council.

In December of 2014, Ms. Loftus provided Defendants via counsel with copies of two expert legal ethics opinions rendered by Michael Rigsby and Leslie Haley.  Both Mr. Rigsby, Virginia State Bar Counsel for 20 years, and Ms. Haley, Virginia State Bar Senior Assistant Ethics Counsel for 14 years, independently and unequivocally advised that:

1) It is not unethical for Ms. Loftus to sit on City Council while also serving as an Assistant County Attorney, and

---

[16]     Fairfax County and Fairfax City contract directly for school services, which means that the City School Board member (and attorney with the County) would have been voting directly on contracts with the County, her employer, unless she chose to recuse herself.  Either way, she was not terminated.

2) While sitting on City Council, Ms. Loftus may legally and ethically recuse herself should any conflict of interest arise, and

3) All other Fairfax County Attorneys are not disqualified from representing the County in matters involving Fairfax City while Ms. Loftus is sitting on City Council, and

4) All other Fairfax County Attorneys are not disqualified from representing the County even in matters that may actually come before the City Council while Ms. Loftus is sitting on that same City Council.

See Exhibits B and C attached hereto.[17]

The opinions of Rigsby and Haley on this supposed "disqualifying issue" are real and concrete.  By contrast, the Defendants' "pro-termination" position is purely hypothetical and not supported by the Rules, LEOs, or the one-line "advice" that Bobzien purportedly received from the Virginia State Bar's Ethics Counsel.  In fact, Loftus by counsel notified Bobzien, Long and their lawyers of the clear errors in Mr. Bobzien's legal analysis (i) before Ms. Loftus's termination occurred on June 27, 2014, and (ii) during the nine-month grievance process when there was still an opportunity to reinstate Ms. Loftus and remedy the Defendants' retaliatory actions.   This included making them aware of the definitive legal opinions offered by Rigsby and Haley.  Compl. at ¶ 61.

Just as critically, Mr. Bobzien and Mr. Long, as the chief executive and chief legal officer, were fully aware of the County ordinances which required Ms. Loftus to be retained in a different County position -- should there be an actual conflict -- unless she was specifically found to be "unfit."  Fairfax County Pers. Reg. 16.5-4.  Indeed, that's exactly how they treated other Assistant County Attorneys who were transferred out of that office for performance-related reasons.  Compl. at ¶ 63.  Therefore, even assuming that Bobzien's legal reasoning was correct (it wasn't) and overrode state law (it didn't), he and Long still failed to protect the constitutional

---

[17]     Mr. Rigsby and Ms. Haley were not permitted to testify at Ms. Loftus' grievance hearing despite the fact that the County was aware of their legal opinions months before the hearing took place.

rights of Ms. Loftus by assigning her to a position outside the County Attorney's office, rather than firing her outright, for participating in local politics.

In summary, defendants Bobzien and Long both possessed final authority to establish municipal liability and were well informed that Ms. Loftus had a right to serve on the non-partisan City Council as afforded to her under the Constitution, Virginia State law, County Ordinances and County policy.  The Defendants were also informed that the Rules of the Virginia State Bar did not trump the rights afforded to Ms. Loftus under those same laws.  They have no basis for qualified immunity.

### 2.  Even if there is Qualified Immunity, It Does Not Apply to Retaliatory Actions Against Employees Who Exercise Constitutional Rights

Even if Defendant Bobzien and Long believed that a conflict of interest truly existed and that was their basis for terminating Ms. Loftus, they are still not protected by qualified immunity, as the acts that they took were plainly retaliatory.

"It is well established that a public official may not misuse his power to retaliate against an individual for the exercise of a valid constitutional right." *Trulock v. Freeh,* 275 F.3d 391, 405 (4th Cir. 2001) citing *Suarez v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  The qualified immunity protection is vitiated even if the act would have been proper absent a retaliatory motive.  *ACLU v. Wicomico County*, *Md.*, 999 F.2d 780, 785 (4th Cir. 1983).  The Defendants' motive for terminating Ms. Loftus was retaliatory in nature based on her decision to run for a seat on Fairfax City Council.  *See* Compl. at ¶ 60.  Indeed, the memos threatened her with dismissal unless she suspended her campaign and/or refused to accept the office.  Id.

Moreover, as the County's chief legal officer, Bobzien at least is held to a heightened standard which prohibits him from using the "clean heart, empty head" defense for avoiding liability.  By comparison, lay managers "are not expected to parse code language as though they

25

were participating in a law school seminar.' Also, '(p)articularly with regard to legal

conclusions, lay officers obviously cannot be expected to perform at the level achievable by

those trained in the law." *Liverman* at *55 *citing Kroll v. United States Capital Police*, 847 F.2d

899, 906 (D.C. Cir. 1988).

Defendant Bobzien, as the County Attorney, is not a lay person. He is an attorney trained

in the law and should perform at a higher level in interpreting statutes and having knowledge of

statutory law.  The Defendants have failed to allege any basis that would allow them to use the

shield of qualified immunity against Ms. Loftus' claims.

### III.      Defendants Bobzien and Long Are Liable in their Official Capacities

Assuming all other arguments fail, the Motion also states that Loftus' claims against

Defendants Bobzien and Long should be dismissed because their actions violated Fairfax County

statutes and policy, which means they cannot be taking "official acts."[18]  (Memo at 20).  Under

the Defendants' standard, any claim against a government official would fail to be an "official

capacity" action, if the offending official could simply point to statute or policy that he violated

with his official act, e.g discrimination based on race.  This, however, is not the law.

Section 1983 does not simply apply to state laws and local rules; it applies to all acts

taken by state actors under "color" of the law.  *See id*.  Indeed, "[M]unicipal liability may be

imposed for a single decision by *municipal policymakers* under appropriate circumstances."

*Stickley v. Southerly*, 416 F. App'x 268, 273 (4th Cir. 2011), quoting *Pembaur v. City of*

*Cincinnati*, 475 U.S. 469, 480 (1986)) (emphasis added).  The critical question is whether the

---

[18]      Confusingly, the Memo states that the suit against Defendants as individuals must be considered an action against Fairfax County itself (Memo at 21), even though the Complaint on its face alleges that Bobzien and Long violated County ordinances, as well as long-established customs, in firing Ms. Loftus.  Having alleged that, Ms. Loftus clearly alleged that Bobzien and Long took their actions as County employees and, therefore, are liable under Section 1983.  *Pembaur*, 475 U.S. at 480.

actor is wielding state power.  The question of who possesses final policymaking authority in

invoking Section 1983 is one of state law.  *Pembaur*, 475 U.S. at 483.  In this case, Defendants

Bobzien and Long made the decision to terminate Ms. Loftus and are liable.

The Defendants assert that there is no "official capacity" claim against Defendants

Bobzien and Long because such a claim lies only against the municipality (i.e. Fairfax County)

and Ms. Loftus has not alleged a violation of a practice or custom pursuant to *Monell.*  436 U.S.

at 658.  However, the *Pembaur* Court – writing eight years after *Monell* -- was clear that a single

"official" act can trigger § 1983 liability for the relevant public officials, even if it's not pursuant

to a custom, practice or law:

> "a government frequently chooses a course of action tailored to a particular situation and
> not intended to control decisions in later situations.  If the decision to adopt that particular
> course of action is properly made by the government's authorized decision makers, it
> surely represents an act of official government "policy" as that term is commonly
> understood.  More importantly, where action is directed by those who establish
> governmental policy, the municipality is equally responsible whether that action is to be
> taken only once or to be taken repeatedly.  To deny compensation to the victim would
> therefore be contrary to the fundamental purpose of § 1983.

*Pembaur*, 475 U.S. at 481.

Here, Defendant Long, as the County Executive, is the "administrative head of the

County" and "shall be responsible to the board for the proper administration of the affairs of the

county."  Va. Code 15.2-516.  Defendant Bobzien, as the County Attorney, is charged with

"advising the governing body and all boards, departments, agencies, officials and employees of

the locality … and in any other manner advising or representing the local government, its boards,

departments, agencies, officials and employees." Va. Code 15.2-1542.  In addition, Bobzien is a

department head who reports directly to the County Executive.  Fairfax Co. Ord. 3-1-1(e)(11).

By definition, these men are public officials.  They are the relevant "municipal policymakers" as

defined by *Pembaur* and possessed final authority in this matter.  Defendant Bobzien fired Ms. Loftus effective June 30, 2014.  Defendant Long ratified Bobzien's termination.

The Complaint plainly alleges that the Defendants decided to terminate Ms. Loftus in June 2014 and exercised their official authority to make that result happen. Compl. at ¶ 59.  It also plainly alleges that the Defendants in their official capacity chose not assign her to a new position, despite notice that the legal "basis" for her termination was plainly insufficient and was not based on her "unfitness" for work.  Id. at ¶¶ 61-63. These allegations are more than sufficient to meet the standard of *Pembaur*.

Notwithstanding the fact that the punitive actions of Long and Bobzien were arbitrary and targeted at Loftus (as opposed to other County employees or County officials), they were still "official acts" and subject to sanction under Section 1983.

### IV.    Ms. Loftus Has Properly Stated a Claim for violations of Virginia Code § 15.2-1512.2 and has a Private Cause of action under § 15.2-1512.2

Ms, Loftus is not an "at will employee."  Under Virginia Law and the County Ordinance, she has a property interest in continued employment with the County as stated *infra*.

Defendants mistakenly state the Ms. Loftus must prove that she has a "right to hold office" in order to maintain her claim under state law.  Def. Mem. at pp. 18-19.  However, Virginia Code § 15.2-1512.2 affords her to participate in politics, just as the First Amendment affords her the same right.  Additionally, as a County employee, Ms. Loftus had a right to be "dismissed solely on the basis of merit and fitness."  See Fairfax Co. Ord. 3-1-1 and 3-1-2(d). She held these rights.  Now the County must prove a basis to take them away.

### 1.    Ms. Loftus Has a Private Cause of Action Under *Bowman* Based Upon the Defendants' Unlawful Termination of Her

28

As stated *infra*, the burden is not on Ms. Loftus to prove that she had a right to hold public office; the burden is on the Defendants to prove that they had a basis to terminate Ms. Loftus when she exercised her First Amendment right to run for public office.  In addition to the violation of those contractual, statutory and Constitutional protections outlined *infra*, Ms. Loftus's 2014 termination also violates the "Bowman rule" which renders an employer liable for terminating an employee in violation of a Virginia statute.  See *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985).

In evaluating "*Bowman* claims," this court has found liability in two types of cases. The first is where the law contains an explicit statement of public policy.   In this case, the relevant law clearly evidences a public policy - explicitly stating that, "[A]ll employees shall be protected against any unwarranted infringement of their rights as American citizens to vote as they choose, to express their opinions, and to join any legitimate political organization whose purpose is not inconsistent with their loyalty to the United States."  County Ord. 3-1-19.  *See also* Va. Code § 15.2-1512.2 (granting local and state employees the "right to participate" in politics); *City of Virginia Beach v. Harris*, 259 Va. 220, 523 S.E.2d 239 (Va. 2000) citing *Lockhart v. Comm. Educ. Systems*, 247 Va. 98, 105 (1994).

The second type of case involves laws that do not explicitly state public policy, but instead are designed to protect the "property rights, personal freedoms, health, safety, or welfare of the people in general."  *Harris* at 232 citing *Miller v. SEVAMP, Inc*., 234 Va. 462, 468 (1987). Again, in this case, both Va. Code § 15.2-1512.2 and County Ord. 3-1-19 are clearly designed to protect the personal freedom of County employees to engage even in partisan elections so long as they were off duty, out of uniform, and not on County property.

Under either prong, the case of Ms. Loftus implicates the protections of *Bowman*.

**2.   "Candidates for Political Office" Necessarily Includes those who are Successfully Elected**

Under *Bowman*, "the employee must also be a member of the class of individuals that the specific public policy is intended to benefit in order to state a claim for wrongful termination in violation of public policy. *Harris* at 233 citing *Dray v. New Market Poultry Products, Inc.*, 258 Va. 187, 191 (1999). Here, as a political candidate, Loftus was a member of the class of individuals protected by Va. Code § 15.2-1512.2 and County Ord. 3-1-19. However, the Defendants argue that these laws only protected Loftus as she campaigned for office (not as an office holder). This argument – which does not cite any case or statute -- lacks common sense as it would render the Virginia statute and similar laws meaningless. See *Wood v. Commonwealth*, 213 Va. 363, 366 (1972); *Commonwealth v. Greyhound Lines, Inc.*, 206 Va. 550, 553 (1965) (laws must be read logically to give meaning to all sections of a statute). What would be the benefit of running for office, if you can be fired for winning?

Notably, Bobzien himself didn't believe this point. In February 2014, he accepted the fact that Loftus could run for office and never raised the issue of her being "fired" for winning. In fact, the February 10th email from Loftus outlined her ability to avoid conflicts <u>after</u> she was elected and took office. ("In the extremely unlikely event that any [conflict] arises, there are ways to handle it, just as we would if you were injured at work and had to file litigation against the County"). In this same email, she specifically reiterated her rights under Va. Code § 15.2-1512.2 and County Ord. 3-1-19. In response, Bobzien replied: "I see and accept your point." And there was no further contact on this point for over two months.[19] Compl. at ¶ 32.

---

[19]   The argument by Bobzien that he was "surprised" to find out in April 2014 that Ms. Loftus actually ran for City Council is almost farcical, considering that she had sought his permission both in person and in writing in February 2014 – and specifically met with Mr. Andreoli for that purpose.

The only evidence that the Defendants cite for their novel position is the statute's failure to specifically enumerate the phrase "hold public office" in the definition of "political activities." However, the statutory examples in 15.2-1512(c) are not limiting, rather they are simply examples of how an employee can participate in politics, which is a never-ending process in Virginia where elections are held every year.  Once an employee is permitted to run for office, there is no legal reason why she cannot hold that office or be regarded as a "candidate" for re-election. [20]  Indeed, as any good politician can attest, the re-election campaign begins as soon as the last vote is counted – and Virginia law requires that all office holders continue to file regular campaign disclosures on the presumption that their candidacy continues (for re-election) until otherwise declared.  *See* Va. Code § 24.2-947.1.

### 3.   Loftus Has a Right to Protect Her Employment and Benefits

In light of the *Bowman* standard, the state laws and County ordinances, and the right of Ms. Loftus to vindicate her rights, the Defendants' position that her sole remedy is the County grievance procedures is an absurdity.   She has a right to protect her employment and benefits through a private right of action.  See *Mandell v. Allen*, 889 F. Supp.857, 865 (E.D. Va. 1995) citing *Hairston v. District of Columbia*, 638 F. Supp. 198, 202 (D.D.C. 1986) (noting that "the District of Columbia's statutory administrative sick leave scheme has been found to create a property interest in the continued receipt of administrative sick leave.").

"[T]he United States Supreme Court has recognized that a state may, through its statutes, rules and other means, give state employees a property interest in continued employment.

---

[20]     There is a practical issue of a government employee being elected to another full-time position – or a position mutually exclusive to her present employment (i.e. an assistant prosecutor being elected Commonwealth's Attorney).  Neither case applies here.  Notably, most Virginia localities pay their elected officials a nominal salary which reflects the part-time nature of the position.  Ironically, the Fairfax County Board is Supervisors is the only County Board which pays its Supervisors a full-time salary of $90,000 per year.  Yet even it still permits Supervisors to hold outside employment.  Compl. at ¶¶ 13-14.

*Mandell*, 889 F. Supp. at 865. "The scope of this property interest...depends upon the state law creating the claim of entitlement, but the federal Constitution protects against the arbitrary deprivation of benefits that fall within the scope of the property interest conferred by state law." *Id*. Here, Ms. Loftus has a property interest in continued employment pursuant to Virginia Code § 15.2-1512.2 and Fairfax County Ordinance 3-1-19. The Virginia statute permits her to run and hold elective office, the County Ordinance prohibits her termination without cause, and the Federal Constitution permits her to exercise her First Amendment rights. All of these protect her against the "arbitrary" deprivation of her employment and benefits.

By filing this private cause of action, Ms. Loftus is merely upholding all those rights.

### 4. The "Grievance Proceeding" is Not an Acceptable Venue for Discharging her State or Federal claims against the County.

As part of its "grievance" argument, the Defendants note that the County Civil Service Commission already considered her claim and ruled against her. However, a Section 1983 plaintiff has a right of access to the Federal court system – not a grievance hearing stacked with County representatives. Moreover, in her grievance hearing, Ms. Loftus had no ability to present evidence and witnesses on her behalf, except those that specifically accompanied her to post-termination meetings with Bobzien. See March 18, 2015 Grievance hearing Transcript attached hereto as Exhibit D. That is hardly due process.

At the grievance hearing, Ms. Loftus was not allowed to submit the expert legal ethics opinions of Michael Rigsby and Leslie Haley. Nor were Rigsby or Haley permitted to testify on behalf of Ms. Loftus. In addition, Ms. Loftus was prohibited from calling Michael H. Long, Deputy County Attorney, retired, on her behalf. *See id*. Mr. Long had supervised Ms. Loftus for 16 of her 17 years and was prepared to testify for Ms. Loftus as both a character witness and as an expert with regard to County laws and policies, including 3-1-19, and conflict of interest laws.

32

However, Mr. Long was not permitted to testify, which merely underlined the inadequacy of the grievance hearing as a forum for upholding legal rights.

For these reasons, the Defendants cannot now allege that the Commission heard or considered her claims.

## V.     Bobzien and Long are Both Liable to Ms. Loftus for Violations of Va. Code 15.2-1512.2 and County Ord. 3-1-19

Defendant Long is liable for all reasons set forth above, including his role as the County's Chief Executive Officer and his official role in firing Ms. Loftus, despite knowledge of all the relevant facts.  Compl. at ¶¶ 61-64.  Defendant Long had final decision making authority in the administration of all Fairfax County affairs, including the approval of Ms. Loftus' termination. Defendant Bobzien reported to Defendant Long and made the recommendation to terminate Ms. Loftus' employment with Fairfax County.   Defendant Long made the final decision.

Defendant Long was made aware of the facts and Ms. Loftus' protections pursuant to the First Amendment, the Virginia Code and Fairfax County Personnel Regulations on or before June 17 – i.e. before Ms. Loftus was terminated.   He remained aware of these issues during the pendency of her grievance proceeding which lasted until March 2015.  Defendant Long had multiple opportunities to overrule Defendant Bobzien's recommendation but chose to act on that recommendation despite the fact that it violated Federal, state and County law.

### Conclusion

For all the reasons stated herein, the Plaintiff, NANCY LOFTUS, respectfully requests the Court deny the Defendants' Motion to Dismiss.

NANCY LOFTUS,

By Counsel.

_____/s/_____

J. Chapman Petersen, Esq., VSB #37225
Jason F. Zellman, Esq. VSB #77499
SUROVELL ISAACS PETERSEN & LEVY PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone: 703-251-5400
Facsimile: 703-591-9285
jpetersen@siplfirm.com
jzellman@siplfirm.com
Counsel for Ms. Loftus

<u>Certificate of Service</u>

I hereby certify that on this 13th day of July, 2015,  I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following individuals.

Sona Rewari, Esq.
Thomas Cawley, Esq.
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
Phone: 703-714-7512
Fax: 703-918-4018
srewari@hunton.com
tcawlety@hunton.com
*Counsel for Defendants*

_____/s/_____
Jason F. Zellman