IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| NANCY LOFTUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:15-cv-692 (CMH/JFA) |
| v. | ) | |
| | ) | |
| DAVID BOBZIEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO
DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

Sona Rewari (VSB No. 47327)
Thomas J. Cawley (VSB No. 04612)
Hunton & Williams LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone:  (703) 714-7512
Facsimile:  (703) 918-4018
srewari@hunton.com
tcawley@hunton.com

*Counsel for Defendants David P. Bobzien and
Edward L. Long Jr.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    Loftus Has Not Shown That She Had a Constitutional Right to Hold Public Office and to be Employed as an Assistant County Attorney. ...........................................1

    A.    The Governmental Interests Upheld by the Supreme Court in Mitchell, Letter Carriers, Broadrick, and Clements Were Not Unique to "Partisan" Politics. ...................................................................................2

    B.    Loftus Cannot Sidestep Mitchell and its Progeny....................................................5

    C.    As to Political Candidacy by Public Employees, the Supreme Court Has Already Done the Pickering Balancing Analysis and Found that the Government's Interests Win. ...................................................................................7

    D.    Loftus's Due Process and Retaliation Rhetoric Is Not Grounded in Any Allegations of Fact.................................................................................................11

    E.    Loftus Has Not Alleged Any Fact to Show that She Was Subjected to Differential Treatment on Any Constitutionally Impermissible Basis. .............14

II.    Loftus Fails to Show that Her Purported First Amendment Right to Dual Employment Was "Clearly Established."................................................................................................15

III.    Loftus's Own Allegations and State Law Are Fatal to her Official-Capacity Claims.......16

IV.    Loftus Cannot Sue for Wrongful Discharge under Bowman...........................................18

V.    Loftus Still Has Not Made Any Allegation that Long Took Any Unlawful Action Toward Her. ..................................................................................................20

VI.    Conclusion ..................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Ashcroft v. al-Kidd*, ____ U.S. ___, 131 S. Ct. 2074 (2011) ........................................................15

*Baker v. McCollan*, 443 U.S. 137 (1979) ........................................................................................15

*Balas v. Huntington Ingalls Indus.*, 711 F.3d 401 (4th Cir. 2013) ...........................................18, 19

*Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985).............................18, 19

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973) .....................................................................2, 3, 6, 9

*Brooks v. Arthur*, 685 F.3d 367 (4th Cir. 2012).........................................................................12, 13

*City of Virginia Beach v. Harris*, 259 Va. 220, 523 S.E.2d 239 (2000) .......................................18

*Clements v. Fashing*, 457 U.S. 957 (1982)..........................................................................2, 3, 7, 9

*Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985) .......................................11, 12

*Connick v. Myers*, 461 U.S. 138 (1983)........................................................................................13

*Crowley v. Prince George's Cnty.*, 890 F.2d 683 (4th Cir. 1989) ................................................17

*Daniels v. Quinn*, 801 F.2d 687 (4th Cir. 1986) ...........................................................................12

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) .........................................................................1

*Fletcher v. Marino*, 882 F.2d 605 (2d Cir. 1989) ......................................................................6, 7

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ...................................................................15

*Graham v. Richardson*, 403 U.S. 365 (1971) ................................................................................9

*Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962
    (4th Cir. 1995)........................................................................................................................17

*Jenkins v. Town of Bryson City*, No. 91-1054, 1991 U.S. App. LEXIS 23745 (4th Cir.
    Oct. 11, 1991) .....................................................................................................................5, 8

*McAuliffe v. New Bedford*, 155 Mass. 216, 29 N. E. 517 (1892)....................................................2

*McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998)..............................................................................13

*Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) ......................16

*Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977) ..................................................14

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)............................................16, 17

*Phillips v. City of Dallas*, 781 F.3d 772 (5th Cir. 2015)....................................7, 8, 9

*Rankin v. McPherson*, 483 U.S. 378 (1987) .............................................................12

*Semple v. City of Moundsville*, 195 F.3d 708 (4th Cir. 1999)...............................16, 17

*Speiser v. Randall*, 357 U.S. 515 (1958).....................................................................9

*Spell v. McDaniel,* 824 F.2d 1380 (4th Cir. 1987).................................................16, 17

*Storey v. Patient First Corp.*, 207 F. Supp. 2d 431 (E.D. Va. 2002)...........................19

*U.S. Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548 (1973).................................................................................................... passim

*United Public Workers of America v. Mitchell*, 330 U.S. 75 (1947) ................2, 5, 7, 8

*Wachsman v. City of Dallas*, 704 F.2d 160 (5th Cir. 1983)......................................3, 4

### STATUTES AND OTHER AUTHORITIES

Fairfax County Code § 3-1-19 ........................................................................ passim

Va. Code Ann. § 15.2-504 ...............................................................................17

Va. Code Ann. § 15.2-516 ...............................................................................17

Va. Code Ann. § 15.2-1512.2 .....................................................................18, 19

Va. Code Ann. § 15.2-1542 .............................................................................17

Nancy Loftus's theory that she had a constitutional right to simultaneously hold office on the governing Council of the City of Fairfax and remain employed as a lawyer for the County of Fairfax is based entirely on rhetoric.  It is not supported by First Amendment jurisprudence, or by the Virginia statute and Fairfax County Ordinance on which she bases her claims.

The Supreme Court has long held that, in the interests of effective and efficient service, governmental employers can restrict their employees' political activities, including the right even to run for office.  Loftus's own allegations and the exhibits she has supplied the Court all show that Loftus was discharged in the interests of ensuring that the County Attorney's Office could serve the County effectively and efficiently.  Loftus insisted that the County Attorney, Defendant David Bobzien, could accommodate her conflict of interest by erecting ethical screens, obtaining conflict waivers, and hiring outside counsel to represent the County in matters involving the City.  But the First Amendment did not require him to do so.  Neither did Virginia law nor the County Ordinance.  Loftus's claims should be dismissed with prejudice.

**I.      Loftus Has Not Shown That She Had a Constitutional Right to Hold Public Office and to be Employed as an Assistant County Attorney.**

In their opening Brief, Defendants asserted that Loftus had not alleged deprivation of any right secured by the Constitution or the laws of the United States—a necessary element of a viable § 1983 claim.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).  Defendants pointed to many decades of decisions from the Supreme Court and the Circuit Courts of Appeal holding that governmental employers may constitutionally prohibit their employees to run for public office.  (*See* Opening Brief at 13-18.)  Because the First Amendment does not guarantee public employees a right even to run for political office, it certainly did not guarantee Loftus the right to dual employment as an elected official in one government and a legal advisor to another.

Loftus's Opposition ineffectually tries to the dodge the crush of these authorities with a jumble of makeweight arguments.

> ### A. The Governmental Interests Upheld by the Supreme Court in *Mitchell*, *Letter Carriers*, *Broadrick*, and *Clements* Were Not Unique to "Partisan" Politics.

Loftus first argues that the Supreme Court's decision in *United Public Workers of America v. Mitchell*, 330 U.S. 75 (1947), and its affirmance of that reasoning a quarter-century later in *U.S. Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548 (1973), were limited to upholding restrictions on "partisan" political activities of public employees. (Opp'n Br. at 14.) She is wrong.

Nothing in *Mitchell* or *Letter Carriers* suggests that the Supreme Court's judgments would have been otherwise if the Hatch Act's restrictions had not been limited to partisan activities. In *Mitchell*, the Court noted that it had long upheld restrictions on contributions of money by government employees, and it described the Hatch Act as "directed at political contributions of energy by government employees. These contributions, too, have a long background of disapproval." 330 U.S. at 98-99. The Court pointed out:

> When in 1891 New Bedford, Mass., under a rule removed a policeman for political activity, an opinion by Mr. Justice, then Judge, Holmes disposed summarily of McAuliffe's contention that the rule invaded his right to express his political opinion with the epigram, "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *Id.* at 99 n.34 (citing *McAuliffe v. New Bedford*, 155 Mass. 216, 220, 29 N. E. 517 (1892)).

The Supreme Court stated: "Congress and the President are responsible for an efficient public service. If, in their judgment, efficiency may be best obtained by prohibiting active participation by classified employees in politics as party officers or workers, we see no constitutional objection." *Id.*

The Court applied the same reasoning in *Letter Carriers*, finding that the federal government's interest in efficient public service justified the broad range of restrictions on political activities contained in the Hatch Act, including running for office.  413 U.S. at 556. The Court stated that its judgment did:

> no more than confirm the judgment of history, a judgment made by this country over the last century that it is in the best interest of the country, indeed essential, that federal service should depend upon meritorious performance rather than political service, and that the political influence of federal employees on others and on the electoral process should be limited. *Id.* at 557.

The Supreme Court applied the reasoning of these cases to state laws in *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), and *Clements v. Fashing*, 457 U.S. 957 (1982), that were not limited to "partisan" elections.  In *Clements*, the Court upheld the  "serve-your-term" and "resign-to-run" provisions in the Texas Constitution against both First Amendment and Equal Protection Clause challenges.  It found that the measures had a rational predicate:  ensuring that an official would not neglect his or her current duties because of aspirations for higher office. 457 U.S. at 968.  These measures were rational responses to the state's interest in minimizing potential conflicts of interest created by an elected official's temptation to act in a way that would promote her political aspirations more than her current official duties.  *Id.*  That risk is not peculiar to partisan elections.  Both *Broadrick* or *Clements* were discussed in Defendants' opening Brief, but Loftus's Opposition does not mention either of them.

The partisan/non-partisan distinction that Loftus attempts to resurrect was laid to rest in *Wachsman v. City of Dallas*, 704 F.2d 160 (5th Cir. 1983).  The plaintiffs there challenged the City of Dallas's restrictions on the political activities of municipal employees on the theory that the local elections were nonpartisan.  *Id.* at 162-64.  They cited certain passages in *Letter Carriers* concerning partisan politics, but the Fifth Circuit pointed out:

> [T]his is because political activity at the federal level is partisan, in both an inter-party and an intra-party sense. This is not simply a coincidence, but is rather a factor establishing the requisite closeness of the relationship between the restrictions in question and the legitimate governmental ends to be served thereby. *Id.* at 165.

The court further noted that *Letter Carriers* "contains several crucial passages, identifying the harms to important societal interests attendant on the politicalization of governmental service. The discussion in these passages is in terms of politics generally rather than simply party or partisan politics." *Id.* at 165-66 (citing *Letter Carriers,* 413 U.S. at 557, 565-67).

It also described three "potential conditions which would be harmful to or injurious to the[] important societal interests" identified in *Letter Carriers*, and stated that these conditions:

> are no less harmful merely because they may be brought by political pressures generated in a nonpartisan, rather than a partisan, political context.  If Police Officer Smith is best suited for a promotion vacancy, but the promotion goes instead to Officer Jones, who is not qualified for the position, because Jones helped in the Mayor's reelection campaign by soliciting campaign contributions from the businesses and residents on his beat while Smith, whose personal preference was the Mayor's opponent, refused to do so, does it make any difference whether the campaign was partisan or nonpartisan? Will not the injuries to the efficiency of the police force and its morale, and to the rights of Officer Smith, be fully as grievous in the one case as in the other? Will not the confidence of the public be just as undermined? Have not the citizens on Officer Jones' beat been just as imposed on by being solicited by the very governmental employee to whom, day in and day out, they must look for both effective police protection and for evenhanded, reasonable enforcement of the laws regulating their own conduct? *Id.* at 167.

The court insightfully added:

> We doubt that such human traits as personal ambition, greed, fear, and the like, on the one hand, and commitment to principle, unselfishness, honor, and similar characteristics, on the other hand, are distributed among such candidates and their supporters in significantly different proportions according to whether the

election by which they are to be chosen is "partisan" or "nonpartisan." *Id.* at 167-68.

**B.     Loftus Cannot Sidestep *Mitchell* and its Progeny.**

Though Loftus attempts to dismiss *Mitchell* as "outdated," (Opp'n Br. at 14), the apt term is "long-standing," or perhaps, "well-established."  *Mitchell* is the progenitor of a long line of cases that have held that the governmental employer's interests in efficient and effective service justified restrictions on its employees' political activities.  Some of the cases that dealt specifically with political candidacy were discussed in Defendants' opening Brief.  Yet, they are almost universally ignored in Loftus's Opposition.  The two that she does mention are neither accurately characterized nor convincingly distinguished.

In *Jenkins v. Town of Bryson City*, No. 91-1054, 1991 U.S. App. LEXIS 23745, at *4 (4th Cir. Oct. 11, 1991) (per curiam), the Fourth Circuit handily rejected a First Amendment claim by a police officer who was discharged because he filed for the Democratic party's nomination to run for sheriff of another jurisdiction.  The police department's regulations "required any member of the police department to resign immediately upon filing as a candidate for any elected office."  *Id.* at *3 n.*.  Loftus claims that the decision "turned on the fact that a police officer was seeking a **partisan** nomination."  (Opp'n Br. at 16 n.10 (emphasis in original).)  But that is not correct.  The regulation was not limited to partisan politics, and neither was the Fourth Circuit's reasoning:

> [T]here is authority for the proposition that the First Amendment is not violated by enforcement of a police department regulation prohibiting employees from seeking elective public office….  As justification for this regulation, the Town of Bryson City may wish to keep their jobs free from the insecurity of the political process and ensure that the laws are even-handedly enforced.

*Id.* at *4-*5 (citations omitted).

The Second Circuit, in *Fletcher v. Marino*, 882 F.2d 605 (2d Cir. 1989), upheld a law that required the dismissal of any employee of a community school board if she or he was elected to a seat on the same board.  It also rejected as "absurd" the very argument that Loftus makes here regarding her purported First Amendment right to simultaneously hold political office and keep her job.  *Id.* at 614.  Loftus tries to deflect *Fletcher*'s devastating blow by claiming that the Serrano Law in that case only "prohibited an elected official and/or political party member from serving on 'any community school board.'"  (Opp'n Br. at 15 n.9.)  Again, she is wrong.

As *Fletcher* states expressly and repeatedly, the Serrano Law also prohibited anyone elected to a community school board from *employment by the same school board*.  882 F.2d at 608.  The Second Circuit addressed this provision of the law as it applied to such employees, and upheld it under the reasoning of *Letter Carriers* and *Broadrick*:

> The provision of the Serrano Law at issue here does no more than *prohibit certain municipal employees*, political party office holders and elected officials *from being community school board members*. It does not stop anyone from running for any office.  Nor does it prohibit the broad range of political activities by community school board members that were at issue in *Letter Carriers* and *Broadrick*.  As to community school board *and Board of Education employees* and as to political party officers, the Serrano Law is constitutional…. *Id.* at 613 (emphasis added).

The court also compared the Serrano Law's restrictions on *employees* to the restrictions on employees at issue in *Letter Carriers* and *Broadrick*:

> The Serrano Law was apparently passed in reaction to a Bronx grand jury conclusion that where politics and government employment collide, misconduct and loss of voter confidence can result and that such misconduct and loss of voter confidence had in fact resulted in the case of the community school boards.  To limit the intersection of school boards, politics and employment is no less a rational way of dealing with the identified problem than were the laws in *Letter Carriers* and *Broadrick* valid ways of dealing with the problem of politics in government employment. *Broadrick* explicitly endorsed outright prohibitions on government

employees running for all elective offices. The Serrano Law goes no further, and indeed stops far short of such a law. *The burden on plaintiff employees here is no greater than those burdens previously found to be constitutional, and the connection to a valid state interest is no less distinct. Id.* at 613 (emphasis added).

It further compared the restrictions to *Clements* noting that:

[T]he Serrano Law does not even require that a person resign a position to run for office, as did the valid constitutional provision in *Clements*.  It merely states that if a person affected by the law runs for a position on a community school board and is elected, *that person must choose between the community school board and the employment* or party position described in the Serrano law. This is unquestionably a valid exercise of the state's power and not a violation of the First Amendment. *Id.* at 614.

As these and the other authorities cited in Defendants' opening Brief demonstrate, the Circuit Courts of Appeal have dutifully followed *Mitchell* and its progeny for decades.   The vitality of their reasoning was confirmed again just four months ago by the Fifth Circuit in *Phillips v. City of Dallas*, 781 F.3d 772 (5th Cir. 2015).   The court there held that city charter provisions prohibiting city employees to seek office in any overlapping county did not violate the First Amendment on their face or as applied to a fire department dispatcher who was fired after declaring his candidacy for county commissioner. *Id.* at 776-82.

**C.   As to Political Candidacy by Public Employees, the Supreme Court Has Already Done the *Pickering* Balancing Analysis and Found that the Government's Interests Win.**

While Loftus does not discuss *Phillips*, she does advance the same flawed argument that failed in both the district court and the Fifth Circuit there.  (Opp'n Br. at 17-20.)  Facing the same "veritable mountain of adverse case law" that Loftus faces here, the plaintiff in *Phillips* also argued that the City did not meet the balancing test of *Pickering v. Board of Education*, 391 U.S. 563 (1968).  781 F.3d at 779.  The Fifth Circuit disagreed:

The district court explicitly recognized the application of *Pickering* and determined that '[t]he same interests that supported the federal

law in *Letter Carriers* can certainly support these laws.' Effectively, the district court concluded that *Letter Carriers* had already done the job of balancing the interests here and concluded that the government came out ahead. We agree. *Id.* at 779-80.

Phillips—like Loftus—also complained that the City and the district court could not just adopt the interests articulated in *Letter Carriers*, but instead, the City was required to "put forward specific reasons for how his *particular* candidacy has endangered the City's interests." *Id.* at 780 (emphasis in original). The Fifth Circuit did not buy that argument either: "We do not see why this must be so. In upholding the Hatch Act in *Mitchell*, for example, the Court did not require any particularized demonstration that the statute's interests were advanced in that specific case." *Id.* (citing *Mitchell,* 330 U.S. at 101). While *Mitchell* predated *Pickering*, "*Letter Carriers*—which explicitly reaffirmed *Mitchell*, and similarly did not appear to require a particularized showing … postdated *Pickering*." *Id.* (citing *Letter Carriers*, 413 U.S. at 564-66).[1]

The Fifth Circuit went further:

> Having justified the City's use of the *Letter Carriers* interests to defend its Charter, we emphasize its holding. There, the Court saw no constitutional infirmity in a law that precluded federal government employees from a very broad range of political activity, including (among other political pursuits): raising money for, publicly endorsing, or campaigning for political candidates; serving as an officer of a political club; participating as a delegate in a political convention or running for office in a political party; and writing letters on political subjects to newspapers. *See* 413 U.S. at 551 n.3, 576 n.21. We note that Phillips is not prohibited

---

[1] The Fourth Circuit in *Jenkins* also did not do its own *Pickering* balancing when it rejected the plaintiff police officer's First Amendment claim. 1991 U.S. App. LEXIS 23745, at *4. There, the department's regulations were amended a month prior to his termination and required any member of the police department to resign immediately upon filing as a candidate for any elected office. *Id.* at *3 n.*. The officer alleged that this last amendment was directed specifically at his candidacy and was intended to discourage him from entering the sheriff's race. *Id.* Yet, the Fourth Circuit did not require a particularized showing as to how the plaintiff's candidacy endangered the town's interests.

from participating in any of these activities. But most significantly here, the Court held that a line-level postal worker could be precluded from "[b]ecoming a partisan candidate for, or campaigning for, an elective public office." *Id.* at 576 n.21. It cannot be said that the Court left open the possibility of a successful as-applied challenge to a rule like the City's: Phillips' sphere of permissible political activity dwarfs the corresponding range afforded the mailmen in *Letter Carriers*.

We would reach the same conclusion even if we were to confine our analysis to the candidacy restrictions at issue in *Letter Carriers*, which formed only one limitation in a non-exhaustive list of 18 activities explicitly prohibited by the Hatch Act. *See* 413 U.S. at 576 n.21. While the Hatch Act prohibited seeking partisan political offices at the state, federal, and municipal level, *id.* at 572 n.18, the City's Charter is narrowly drawn to prevent City employees from running for an office in the Dallas metropolitan area or from seeking an office that might create a conflict for the employee.

781 F.3d at 780-81. The Fifth Circuit's incisive analysis dooms Loftus's claims. Loftus has yet to show that holding political office is an act of political expression protected by the First Amendment.[2] But even if she could, the interests that supported the restrictions on candidacy in *Letter Carriers*, *Broadrick*, and *Clements* equally support prohibiting an employee from serving as one government's lawyer when she holds a seat on the governing body of another.

---

[2] The cases that Loftus cites in claiming that she has a "First Amendment right to freely participate in non-partisan political activity outside her professional employment within Fairfax County," (Opp' Br. at 14), say no such thing and are factually inapposite. *Speiser v. Randall*, 357 U.S. 515 (1958), concerned a tax exemption program for veterans that was conditioned upon execution of an oath that they would not advocate for the overthrow of the Government by force or violence or other unlawful means, or advocate for support of a foreign government in the event of hostilities. *Pickering* concerned a teacher who was dismissed after sending a letter to a local newspaper in connection with a recently proposed tax increase that was critical of the way in which the Board of Education and the district superintendent of schools had handled past proposals to raise new revenue for the schools. *Graham v. Richardson*, 403 U.S. 365 (1971), was not even a First Amendment case, and it concerned an Equal Protection Clause challenge to a law that conditioned receipt of welfare benefits on citizenship or years of residency in the country.

Moreover, the interest served by this restriction is readily apparent from the record: ensuring that the County's legal advisers do not have duties to another locality or political constituency whose interests are or could be adverse to the County's.  The County and the City deal regularly with one another, the County Attorney's office advises the County on many of those dealings, and the County's interests have been adverse to the City's in at least some of these dealings.  (*See* Compl., ¶¶ 29-30 & Ex. C, at 5; Opening Br., Ex. 1, at 3-4; Opp'n Br., Ex. D, at 99-113; *see also City of Fairfax v. Bd. of Supers. of Fairfax Cnty.*, No. 1:12-cv-513 (E.D. Va.).)  Even Loftus does not contend that she could, within the bounds of her ethical obligations as an attorney, advise the County in a matter in which the County's interests were adverse to the City's.  That alone would justify prohibiting her from continuing as an attorney for the County.

But the record goes further:  Bobzien believed, based on the Rules of Professional Conduct, Virginia's Legal Ethics Opinions, and the advice from the Virginia State Bar's Ethics Counsel, that Loftus's conflict of interest would also disqualify every other attorney in his Office from advising the County in matters adverse to the City.  (*See* Compl., Exs. C & F; Opening Brief, Ex. 1; Opp'n Br., Ex. D at 97-99.)  The County has a substantial interest in having the benefit of the service of its own in-house lawyers on matters involving the City.   These interests far outweigh Loftus's interest in holding positions of trust in two separate jurisdictions.

Moreover, Loftus insisted that Bobzien's analysis of the ethics rules and opinions was wrong.  She claimed that she could recuse herself from any Council vote involving the County.  But recusal would not satisfy the County's right to efficient and effective service from its lawyers.   Loftus also insisted, that even if he was correct, Bobzien could work around the conflict by erecting ethical screens, obtaining conflict waivers, and hiring outside counsel to represent the County in matters involving the City.  (*See* Opp'n Br. Ex. D at 115-19.)  But these

measures would pose practical and financial burden on the Office and the County.  (*Id.* at 115-19; 184-86.)   Bobzien thus found that Loftus's continued employment would violate the County's personnel regulation 4.16 which provides, in relevant part:

> -1    Employees in the competitive service *shall not engage in any employment, activity or enterprise, which has been or may be determined to be inconsistent, incompatible, or in conflict with duties, functions, or responsibilities of their County employment.*
>
> -2     No employee in the competitive service *shall hold any other position in any other governmental jurisdiction* or in private employment, when such other position *may have the effect  of reducing the efficiency of such employee in the competitive service.*  (Compl., Ex. F, at 4; *see* Opening Br., Ex. 1, at 10-11.)

The First Amendment did not require him to compromise the efficiency of his Office and increase the burden to the County just to accommodate Loftus's outside employment.

### D.    Loftus's Due Process and Retaliation Rhetoric Is Not Grounded in Any Allegations of Fact.

Unable to find any support in the First Amendment case law for her theory that she has a protected right to dual employment as a Fairfax City Councilmember and an Assistant Fairfax County Attorney, Loftus resorts to the curious argument that "Defendants acted purposefully and recklessly to deprive Ms. Loftus of her property interest in her job in retaliation for exercising her free speech rights."  (Opp'n Br. at 17-18.)

But Loftus has not asserted a due process claim.  Nor could she.  Under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), due process requires "some form of pretermination hearing" prior to discharge of a governmental employee who can only be dismissed for cause. *Id.* at 542.  Where employees are provided post-termination administrative procedures, due process is satisfied by "oral or written notice of the charges against [the

employee], an explanation of the employer's evidence, and an opportunity to present his side of the story," either in person or in writing.  *Id.* at 546.

Loftus's own Complaint shows that she received the full process required by *Loudermill.* Her supervisor, Erin Ward, gave Loftus a detailed memorandum on May 29, 2014, setting out the reasons for recommending her dismissal, and an opportunity to be heard before a decision was made.  (Compl. ¶ 51 & Ex. F.)  Loftus not only received that memo, but she responded through counsel six days later.  (*Id.* ¶ 47 & Ex. G.)   She was discharged one month after the advance notice memo.  (*Id.* ¶ 59.)

Loftus also received considerable process post-dismissal, which culminated in a full-day hearing before a panel of the Civil Service Commission, complete with documentary and testimonial evidence.  (Compl. ¶¶ 61-62;  Opp'n Br., Ex. D (hearing transcript).)  As shown in the 357-page transcript of the hearing that is attached as Exhibit D to Loftus's Opposition, Loftus's counsel also represented her during that hearing.  (Opp'n Br., Ex. D.)  Loftus advanced there the same arguments that she rehashes in her Opposition regarding the County personnel regulations, the County Ordinance, and the Virginia state law.  (*See, e.g., id.* at 39-47, 345-53.)  Though Loftus may have been dissatisfied by the outcome of that hearing, her due process rights have been satisfied.

Loftus fails equally in attempting to recast her claim as "retaliation for exercising her free speech rights."  Such a claim requires, in the first instance, *speech* by the employee and that the public employee have been "speaking as a citizen upon a matter of public concern."  *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (citing *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998) and *Daniels v. Quinn*, 801 F.2d 687 (4th Cir. 1986)).  This is "the threshold question." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987), and without it, the claim necessarily fails "even if the

-12-

termination decision 'may not be fair' or is 'mistaken or unreasonable," *Brooks*, 685 F.3d at 371 (quoting *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)).

Loftus's Complaint, however, does not allege that she engaged in any speech, far less that she was discharged because of it.  Her Complaint alleges that she was discharged because she was elected to the Fairfax City Council.   (*See* Compl. ¶¶ 51, 71.)  She does not identify any statement she made; nor does she allege that her discharge was motivated because of it.  Her Opposition also states:  "This case arises from the decision of the Fairfax County Attorney on June 27, 2014, to terminate Ms. Loftus as an Assistant County Attorney for Fairfax County, *solely because she had been elected to the City Council in Fairfax City*, a neighboring but independent jurisdiction."  (Opp'n Br. at 6 (emphasis added).)

Even if Loftus could show that holding elected office is a form of expression protected by the First Amendment, her claim still fails.  Upon finding that an employee was speaking as a citizen on a matter of public concern, the Court, in analyzing a retaliatory discharge claim, must next consider whether the employee's interest in speaking upon the matter of public concern outweighed the employer's "interest in providing effective and efficient services to the public" and "managing the working environment." *McVey*, 157 F.3d at 277-78; *Brooks*, 685 F.3d at 371.  Only if this second criteria is also met does the court "turn[] to the factual question of whether the employee's speech was a substantial factor in the employee's termination decision." *Brooks*, 685 F.3d at 371 (internal quotation omitted).

The second factor entails the same *Pickering* balancing already discussed above.  *McVey*, 157 F.3d at 277-78.  And as already discussed above, the Supreme Court has held that the public employer's interest outweighs the employee's interest even to *run fo*r *office*.  Therefore, even if holding elected office is a form of political expression, Loftus's personal interest in serving both

as a Fairfax City Councilmember and an Assistant Fairfax County Attorney is far outweighed by the County's interest in employing attorneys who do not simultaneously owe a duty to act in the best interests of a locality that has been and could foreseeably again be its adversary.[3]

### E.   Loftus Has Not Alleged Any Fact to Show that She Was Subjected to Differential Treatment on Any Constitutionally Impermissible Basis.

Loftus's Opposition suggests she was treated differently from the "other Fairfax County attorney who served as an elected Fairfax City School Board member from 1996-2008." Opp'n Br. at 23. But that argument is not based on any allegation of fact.

Loftus does not and cannot allege that this other employee was even a member of the Office of the County Attorney. Indeed, Loftus's counsel has confirmed that she was not; rather, she worked in an entirely different department of the County—Code Enforcement. (*See* Email exchange between S. Rewari and C. Petersen, dated July 14, 2015, attached as Exhibit 1 hereto; *see also* Opp'n Br., Ex. D at 161 (testimony that County does not have employees working as attorneys in department other than the County Attorney's Office).) Also, the Fairfax City Council had just finished suing the County when Loftus was elected to the Council in 2014. (*See* Compl. ¶ 30; *see also* Stip. of Dismissal without Prejudice, *City of Fairfax v. Bd. of Supers. of Fairfax Cnty.* et al., No. 1:12-cv-513 (E.D. Va. Jan. 6, 2014), ECF No. 40.) Loftus does not, and cannot, allege that the County and the City School Board had a similarly adversarial history before this other individual took office on the City School Board.[4]

---

[3] The cases cited above, and in Defendants' opening Brief, amply illustrate this. So, too, does *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977), which is cited in Loftus's Opposition. The Seventh Circuit there upheld dismissal of a § 1983 claim by a deputy city attorney who was fired after he announced his intention to run for Congress, against the wishes of the city attorney. Accepting the allegation that the deputy city attorney was fired in retaliation for seeking office against the city attorney's wishes, the Seventh Circuit nevertheless found the claim failed because the state interest's outweighed the plaintiff's. 558 F.2d at 830-31.

[4] Loftus says without citation, that the City School Board and the County contract for school services, but according to the City School Board's public website, its contract for school

Loftus's Complaint also alludes to other elected officials in Fairfax County who were attorneys (Compl. ¶ 5). These allegations, too, lead her nowhere. These individuals are not alleged to have been County employees, much less members of the County Attorney's Office.

In sum, Loftus has not alleged any facts to show that she was treated differently than anyone similarly situated to her, or that such differential treatment was on a constitutionally impermissible basis.

## II.   Loftus Fails to Show that Her Purported First Amendment Right to Dual Employment Was "Clearly Established."

Loftus's Opposition is proof-positive that Defendants are entitled to qualified immunity. Her arguments are not supported by the "preexisting law" and do not show that the alleged unlawfulness of Defendants' actions was "beyond debate." *Ashcroft v. al-Kidd*, ____ U.S. ___, 131 S. Ct. 2074, 2083 (2011); *Francis v. Giacomelli*, 588 F.3d 186, 196 (4th Cir. 2009). Moreover, Loftus's argument against qualified immunity is that she had "clearly established" rights under the County's ordinance and Virginia state law. (Opp'n Br. at 22-25.) But a § 1983 claim requires violation of a right under *federal* law and cannot be based on state law (much less local ordinance). *Baker v. McCollan*, 443 U.S. 137, 146-47 (1979).

Loftus further argues that her position was allegedly supported by two legal ethics experts whose opinions she produced during her grievance in December 2014—six months after her dismissal. (Opp'n Br. at 23-24.) But neither letter addresses the First Amendment or any other federal law. (*See* Opp'n Br., Exs. B & C.)

Loftus also claims that qualified immunity does not apply to retaliatory actions. (Opp'n Br. of 25-26.) But that argument is apropos of nothing. Loftus has yet to show that Defendants

---

services is with the Fairfax County School Board—a separate public body—not with the County itself. *See* http://cityoffairfaxschools.org/city-of-fairfax-schools/school-services-agreement-with-fcps/ (last accessed July 19, 2015).

violated any "clearly established" constitutional right.   Nor has she alleged any fact to show Defendants had any improper motive.   Indeed, she has alleged *no* facts to show that Long had any role in her discharge, much less that he harbored a retaliatory motive.   And Loftus's own allegations show that Bobzien was motivated by a belief—one that she claims to be legally incorrect—that her seat on the City Council created a conflict of interest imputable to every attorney in his Office.   (Compl., Exs. C & F.)   Bobzien found support for his belief in the Rules of Professional Conduct, Legal Ethics Opinions, and advice from the State Bar's Ethics Counsel. (*Id.*, Ex. F; Opp'n Br., Ex. D at 72-101.)   According to Loftus's own exhibits and Complaint, Bobzien reasonably believed that Loftus's discharge did not violate any of her clearly-established rights.   (*Id.*.)

### III.     Loftus's Own Allegations and State Law Are Fatal to her Official-Capacity Claims.

Loftus's Opposition argues confusedly that she has alleged an official-capacity claim under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), because Defendants were acting in their capacities as County Attorney and County Executive.   But it is not sufficient to allege that an employee's action was taken in the course of his job.   That would make official-capacity claims legally indistinguishable from individual-capacity claims.

Instead, an official-capacity claim requires that a *municipal* policy or custom have caused the injury.   *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). "An official policy often refers to 'formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government.'" *Semple v. City of Moundsville*, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting *Pembaur*, 475 U.S. at 480 (1986) and *Spell v. McDaniel,* 824 F.2d 1380, 1386 (4th Cir. 1987)).   "[T]he governmental unit may create an official policy by making a single decision

regarding a course of action in response to particular circumstances," but "these principles are limited, however, because municipal liability attaches only when the decision maker is the municipality's governing body, a municipal agency, or an official possessing final authority to create official policy." *Id.* (citing *Pembaur*, 475 U.S. at 481; *Spell*, 824 F.2d at 1387).

As Defendants asserted in their opening Brief, Loftus's Complaint alleges that Defendants' actions were not taken pursuant to the County's official policies and customs, but rather in contravention of the County's policies and customs, and indeed, even a County ordinance.  (Compl. ¶¶ 12, 21, 35, 39, 60, 61.)  Those allegations are fatal to her claim, and Loftus's Opposition makes no rejoinder.

Instead, Loftus claims that Long and Bobzien are final policymakers for the County, and thus, any action they take can be challenged under *Pembaur*.  But that is flat wrong.  As Loftus cedes, the question of who possesses final policymaking authority is one of state law.  *Pembaur*, 475 U.S. at 483.  She also admits that the duties of the County Executive are set forth in Va. Code Ann. § 15.2-516, and the County Attorney in Va. Code Ann. § 15.2-1542.  These statutes do not give either the County Executive or the County Attorney final authority to make County policy.  Indeed, Va. Code Ann. § 15.2-504 reserves that authority exclusively to the County's Board of Supervisors:  "The board shall be the policy-determining body of the county and shall be vested with all rights and powers conferred on boards of supervisors by general law, consistent with the form of county organization and government provided in this chapter." *See, e.g., Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962, 966 (4th Cir. 1995) (fire chief's discretion to hire, fire, and promote individual employees did not equate to "final policymaking authority" over employer-employee relations in city which rested by law only with the city council and city manager); *Crowley v. Prince George's Cnty.*, 890 F.2d

683, 686-87 (4th Cir. 1989) (although police chief had been delegated final decision-making authority for personnel decisions, that did not make the police chief the final policymaker for purposes of imputing municipal liability).

Because Defendants are not final policymakers under Virginia law and because Loftus's own allegations state that Defendants' actions contravened the County's ordinance, policies, and customs, her official-capacity claims must be dismissed as a matter of law.

## IV.    <u>Loftus Cannot Sue for Wrongful Discharge under *Bowman.*</u>

Loftus's Opposition does not address Defendants' argument that Va. Code Ann. § 15.2-1512.2 and the County Ordinance, Fairfax County Code § 3-1-19, do not provide any private right of action.   She also offers no rebuttal to the fact that neither the statute nor the County Ordinance provide for individual liability.   Instead, Loftus tries to metamorphose Count II into a wrongful discharge claim under *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985).  But that argument is another dead end.

*Bowman* is a judicially-crafted exception to the employment-at-will doctrine, allowing an at-will employee to "bring a tortious wrongful discharge claim if her termination violates a state public policy as expressed in a statute."  *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 409 (4th Cir. 2013) (citing *Bowman*, 229 Va. 534, 331 S.E.2d at 801).   The Supreme Court of Virginia has consistently characterized this exception as "narrow."  *Id.* (citing *City of Virginia Beach v. Harris*, 259 Va. 220, 523 S.E.2d 239, 245 (2000)).   It also has noted that "[w]hile all statutes of the Commonwealth reflect public policy to some extent, since otherwise they presumably would not have been enacted by our General Assembly, termination of an employee in violation of the policy underlying any one of them does not automatically give rise to a common law cause of action for wrongful discharge."  *Harris*, 259 Va. at 232, 523 S.E.2d at 245 (holding that police officer who was fired after obtaining a warrant for obstruction of justice

against his superior could not base his wrongful discharge claim on the Virginia criminal statute pertaining to obstruction of justice).

"As a threshold matter, a plaintiff attempting to assert a wrongful discharge claim pursuant to *Bowman* must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 450 (E.D. Va. 2002); *see Balas*, 711 F.3d at 409 (finding that plaintiff's proffered *Bowman* claims would have been futile because the conduct she alleged did not violate the state laws she identified).

Here, Loftus cannot maintain a *Bowman* claim based on Va. Code Ann. § 15.2-1512.2 because that statute does not give her a right to hold public office. While the statute allows employees to participate in a wide range of political activities, including campaigning and running for public office, it conspicuously does not include "holding public office." *See* Va. Code Ann. § 15.2-1512.2(C) (defining "political activities"). Loftus' Opposition asks: "What would be the benefit of running for office, if you can be fired for winning?" (Opp'n Br. at 30.) The answer is simple: so you can keep your current job unless and until you win office. As a candidate, an employee does not have conflicting duties; her duties are only to her employer. As a public official, however, she has a duty to advance her constituency's interests. Where her duties to her constituency and her duties to her employer conflict, she cannot serve both masters. It is no accident that § 15.1-1512.2 does not give her a right to attempt to do so.

*Bowman* only applies to state statutes, so Loftus also cannot base such a claim under the County Ordinance. Moreover, the Ordinance adopts the same definition of "political activities" contained in Va. Code § 1512.2. Loftus, therefore, could not show that her discharge violated any right under that Ordinance in any event.

V.    **Loftus Still Has Not Made Any Allegation that Long Took Any Unlawful Action Toward Her.**

Defendants' opening Brief pointed out that Loftus had not alleged any facts to show that Long took any action, much less unlawful action, toward her.  Loftus alleged that Long had "ratified" her discharge, but her own allegations showed that Bobzien terminated her employment, and the Civil Service Commission made a "final and binding" decision that his decision was justified.  (*See* Opening Brief at 26-27.)  Loftus did not, and could not, allege that she appealed the Commission's decision to Long.  (*Id*.)

Loftus's Opposition answers these points with more of the same conclusory allegations.  (Opp'n Br. at 33.)  But attorney argument is not an adequate substitute for factual allegations.  Loftus has not met her burden to show that Long took any unlawful action toward her.

VI.    **Conclusion**

Loftus's claims are rich in rhetoric, yet poor on the law and the facts.  She did not have a right under the First Amendment, the Code of Virginia, or the Code of Fairfax County to hold simultaneous employment as an assistant county attorney for Fairfax County and a member of the Fairfax City Council.  The Court should dismiss her Complaint with prejudice.

Respectfully submitted,

DAVID P. BOBZIEN
EDWARD L. LONG JR.

By:_____/s/_____
Sona Rewari (VSB No. 47327)
Thomas J. Cawley (VSB No. 04612)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone:  (703) 714-7512
Facsimile:  (703) 918-4018
srewari@hunton.com
tcawley@hunton.com

## CERTIFICATE OF SERVICE

I certify that on July 20, 2015, I will electronically file a copy of the attached with the

Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing

(NEF) to the following:

J. Chapman Petersen, Esq.
Jason F. Zellman, Esq.
SUROVELL, ISAACS, PETERSEN & LEVY, PLC
4010 University Drive, Suite 200
Fairfax, Virginia 22030
jpetersen@siplfirm.com
jzellman@siplfirm.com

Mary Lynn Tate, Esq.
TATE LAW PC
16006 Porterfield Highway
Abingdon, Virginia 24210
mltate@tatelaw.com

*Counsel for the Plaintiff, Nancy Loftus*

                                             /s/
                                        Sona Rewari (VSB No. 47327)
Thomas J. Cawley (VSB No. 04612)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone:  (703) 714-7512
Facsimile:  (703) 918-4018
srewari@hunton.com
tcawley@hunton.com

*Counsel for Defendants David P. Bobzien and*
*Edward L. Long Jr.*